James J. Crisona, J.
Petitioner, as friend acting for Anonymous, an inmate since December 1, 1931 in New York State mental institutions, moves (1) to require the respondent, the Director of Oreedmoor State Hospital, in which Anonymous has been confined since April 27, 1933, to submit to an oral examination concerning the quality and quantity of medical care and treatment, etc., that Anonymous is receiving and (2) for the issuance of a writ of habeas corpus requiring the respondent to appear at a hearing to be held at a time and place to be fixed in the order, for the purpose of allowing the court to inquire into the lawfulness of the continued detention of Anonymous insofar as he allegedly is not receiving proper medical rehabilitative treatment.
Anonymous was committed to Brooklyn State Hospital on December 1, 1931. On April 27, 1933 he was transferred to Oreedmoor State Hospital where he is still a patient. An examination by three qualified psychiatrists on January 11,1961 shows that Anonymous is a chronic schizophrenic. While it is conceded that he is mentally incompetent and was properly committed, petitioner contends that the patient is entitled to reasonable care and treatment pursuant to sections 2 and 70 of the Mental Hygiene Law of the State of New York, which treatment he allegedly is not receiving, and that in any event *585 he has the right to proper treatment under the Fourteenth Amendment of the United States Constitution.
Petitioner argues that to the extent that Anonymous is not receiving such proper treatment, he is being deprived of his liberty without due process of law and should, therefore, be released, and that to establish such claimed lack of proper care on the return date of the writ of habeas corpus herein sought, the oral examination of the Director of the institution in which Anonymous is confined is necessary.
The Attorney-General of the State of New York appearing for respondent objects not only to the procedure employed by petitioner, but contends that this court lacks jurisdiction over the internal management of the State’s mental institutions, the Legislature having been specifically vested with the powers of guardianship over mental incompetents, and having exercised such powers by the enactment of the Mental Hygiene Law; that any relief to which petitioner may be entitled may be obtained solely by recourse in the first instance to the State Commissioner of Mental Hygiene.
The State of New York acts in parens patries as concerns mentally incompetent persons (Sporza v. German Sav. Bank, 192 N. Y. 8). The rationale for this doctrine as stated at page 15 in Sporsa is “ on account of the necessity of protecting them [mental incompetents] and the public from their disordered minds and insane acts.” Section 4 of article XVTI of the New York State Constitution has delegated to the Legislature of the State of New York the power to act concerning the care and treatment of the mentally disordered. In pursuance of such power the Legislature has enacted the Mental Hygiene Law which contains a comprehensive scheme for the care and treatment of the mentally disordered, duly committed to State institutions, and for the necessary agencies staffed with persons qualified to deal with such unfortunates. Section 86 of the Mental Hygiene Law provides in pertinent part as follows : ‘ ‘ When the commissioner has reason to believe that any person alleged or adjudged to be mentally ill is wrongfully deprived of his liberty, or is cruelly, negligently or improperly treated, or inadequate provision is made for his skilful medical care, proper supervision and safe keeping, he may ascertain the facts, or may order an investigation of the facts by the department. * * * If the commissioner deem it proper, he may issue an order directed to any or all institutions, directing and providing for such remedy or treatment, or both, as shall be therein specified.”
*586 Inasmuch as the entire case sought to be established by petitioner is predicated upon allegedly inadequate or insufficient rehabilitative treatment which Anonymous has been receiving, resort for the amelioration thereof is to the Commissioner of Mental Hygiene as provided above. As was stated by Justice Jeuks of the Appellate Division, Second Department, in Matter of Thaw (138 App. Div. 91, 95): “ I think that the Supreme Court could well, in the exercise of its sound discretion, dismiss any application that rests upon complaint against internal administration, upon the ground that there had been no application to the State Commission, which is clothed with full authority in the premises, and, therefore, that such body had not been afforded opportunity ‘ to exert its administrative functions.’ ” This court’s jurisdiction is limited and is concerned largely with the involuntary commitment of incompetent persons and their subsequent release, if found to be sane. (Civ. Prac. Act, art. 77; Mental Hygiene Law, §§ 70, 74, 76, 204.)
To take original jurisdiction of the instant application on the basis upon which it is predicated would constitute usurpation of power duly delegated by State constitutional fiat to the Legislature which, in the exercise of its wisdom, has vested the Commissioner of Mental Hygiene with the power to ascertain whether any person adjudged to be mentally ill is ‘ ‘ improperly treated, or inadequate provision is made for his skilful medical care, proper supervision and safe keeping ”. It is that State official to whom the petitioner should apply to ascertain the facts and thereupon, if warranted, to issue an order ‘ ‘ directing and providing for such remedy or treatment, or both, as shall be therein specified. If such order be just and reasonable, and be approved by a justice of the supreme court * * * it shall be binding ’ ’. (Mental Hygiene Law, § 86.)
The foregoing provisions do not impinge upon any right of an inmate mandated by the Federal Constitution. The petition is accordingly dismissed and the application in all respects denied, without prejudice to resort to the Commissioner of Mental Hygiene as aforesaid.